22-1708. Good morning. Good morning, your honor. May it please the court. Susan Kelman for the appellant Pugh. Good morning, Judge. This is not our first trip here to the Court of Appeals on this matter and previously in what I will refer to with the court's permission as Pugh 1, this court directed that when a defendant has been convicted of multiple counts, the sentencing court should set forth why a sentence equal to the statutory maximum on one count will not produce a sufficient sentence within the meaning of 3553. And it's our position, your honors, that in fact that is exactly what the district court did not do on remand. The district court on remand focused virtually exclusively on the notion that this was a bad crime, this is a bad thing to do, and the potential damage to the United States or the potential assistance that this defendant- That's exactly what the district court did, right? The district court said that the maximum sentence on count one doesn't cover the conviction on count two. He noted the guidelines range being above the maximum sentence. He said the defendant tried to destroy evidence and he says it's truly a separate circumstance that must be taken seriously. So there needs to be a separate sentence for the obstruction counts. I apologize, Judge, I'm having a little difficulty hearing you. I'm sorry, I'll move the microphone. Is that better? Yes, it is. Thank you. I apologize. I was saying that the district court said that the maximum sentence for count one isn't sufficient. It took note of the guidelines range. It said that the defendant tried to destroy evidence and that's a truly separate circumstance that must be taken extremely seriously. And then it also said the idea that you could hide evidence and you don't get a separate punishment for that sends a message that you can't do that. That's a message that's not acceptable. So hasn't he explained that the maximum sentence on count one would not provide sufficient punishment? I don't think that he did, Judge, and I think additionally, he certainly didn't lay out any of the 3553 factors that this court instructed him to take a look at. What the judge did- He did lay out two, at least two, maybe three of the 3553A factors with respect to the first count, which is just punishment. And general deterrence, and I think he also spoke to specific deterrence, didn't he? Well, with respect to specific deterrence, it would seem to me that that would in order the defendant's favor in this case, because he said he saw no risk of recidivism and that the defendant was on the proper track. He had put- No, but I understood you to say that he didn't consider any of the 3553A factors, and I think that misstates the record. Perhaps I could say he didn't fully take into account all of the 3553A factors. Maybe that would be a better way to say it, Your Honor. I appreciate that, because what he didn't take into account or didn't at least give the defendant credit for was a positive adjustment to incarceration, was a change in his mental state in terms of taking coursework successfully, completing the coursework, finding a passion which he is developing as in the culinary area. He's- Was that all before Judge Garifas? Hi there. Yeah, I'm sorry, Judge. Was that all before Judge Garifas? It was, Your Honor. So when he said that he'd considered, that he'd reviewed all of the materials in front of him, correct? He did, Your Honor, but what he- So we don't usually require one of the district court judges. It might be better, but we don't require a district court judge to list everything, so long as the district court judge makes it clear that he or she has considered the factors, generally speaking. It seems from the argument, Your Honor, and I think the record would reflect it, that the focus of the district court was, one, how serious this offense was, even though it was an attempt. And ignoring the fact that even with the seriousness of the offense, in fact, the national average for convictions of this offense, whether attempted, conspiratorial, or- You're saying that the district court didn't consider his character and reformation and that kind of thing. But the district court did vary below the guidelines range, right? And he said that the defendant's background and his current behavior justify a variance from a guideline sentence, right? And so he's taking into account the guy's favorable characteristics, and in fact, is sending him to a below guidelines sentence. Well, the guidelines- How could it be that he ignored positive characteristics about him when he said that his current behavior justifies varying below the guidelines that would otherwise apply? I think that one of the things that came across loud and clear during the argument in the district court was the fact that the district court focused on the fact that, under current law, a defendant could get up to 20 years. That Congress had changed the law, and a defendant could get up to 20- He doesn't say that to justify a higher sentence. He says, I note that today, here, he says, I wish to point out that subsequent to this defendant's criminal behavior, Congress extended the maximum sentence on count one to 20 years. I believe that a 15 year sentence, which is the maximum sentence under the statute, is an appropriate sentence. So he notes that it's higher today, but he only says that to justify giving him the statutory maximum that applies to his case. Right, he doesn't say, therefore, I'm going to give him a higher sentence. But a fair amount of his analysis was based on speculation. He said, well, the things that were destroyed might have been very helpful to ISIS, but we have no evidence of that. He said that some of the materials might have really been destructive towards the United States, but we have no evidence of that. The materials that they- When a defendant destroys evidence, does that mean the district court just can't penalize that conduct? Because you don't know what the evidence was? Well, there was a fair amount that was recovered, your honor, and the vast majority of it, if not all of it, was- So if a defendant succeeds in destroying evidence, you can't punish him for that? Well, I think the speculative nature of what it is that may be missing is what was troublesome here. Because what was found was purely videotapes and just propaganda and propaganda and propaganda. We also have a defendant here who was fairly inept at what he was doing to the extent that, and there was an expert at the trial, and the expert said that, in fact, you need, nobody can get into ISIS territory unless they have a handler, an ISIS-related guide, things of that sort. And he went into the concession in the airport and just brought a map, which the expert applying the trial wouldn't have gotten him anywhere, not even, forget near ISIS, it wouldn't have even gotten him into Syria. That's why he got caught. Even if we agreed that there was error, aren't you subject to plain error review? Your honor, I think if I recall, this court ruled that the standard that would be appropriate would be deferential abuse of discretion. But it seemed to me, and we addressed this in our reply brief, that whether it was plain error, and it seemed to us it was plain error, because the court didn't, in our analysis, follow this court's direction in terms of the way it was instructed to proceed, so. Thank you very much. Thank you, Your Honor. We have reserved some time for rebuttal. Yes. So we'll hear from the government. Good morning. Good morning, Your Honors. May it please the court. My name is Lorena Michelin, and I represent the United States in this case on appeal. The amended judgment entered in this case on August 3rd of 2022 should be affirmed in all respects. As the court is aware, the district court resentenced the appellant to a total of 20 years imprisonment on both counts, which was a 15 year decrease from the original 35 year sentence. That's not, that doesn't really go anywhere, does it? Because even if it's a decrease from the original sentence, it doesn't tell you that the court considered all of the factors or justified the point within the range where the court chose. That's correct, Your Honor, and the record is clear and supports the finding. Well, if you say that, if you start with that's correct, Your Honor, then that's a problem. But go ahead. It's correct that the district court was required to find, to explicitly state its reasons to comply with the instructions of this court. And you're not saying that just because it's a 15 year reduction, it means that you didn't have to explain it. You're just saying that the fact that he changed his mind shows that he gave consideration to the factors. And then you're going to explain how the record shows that he did that. Yes, Your Honor. That's what I was about to do. To the record, it's clear that the district court considered both procedural and substantive factors and explained explicitly why it had imposed and crafted such a specific sentence. And appellate counsel just stated that the district court did not consider the defendant's characteristics in imposing its sentence. That argument is flawed. The court gave ample reasoning as to why it had actually considered this particular defendant's circumstances, his upbringing, his background, and how that was relevant in determining the sentence. Counsel, I see in the sentencing transcript the court explaining why there needed to be some incremental punishment for the obstruction of justice. What I don't see, maybe you can point me to it, is how the district court chose that the maximum sentence on count one was the appropriate sentence. Other than to point out that the guidelines dictated a higher sentence, but the guidelines are not the metric for an appropriate sentence. 3553A factors are. So tell me where I should look. Well, your honor, the court should look at the whole record of the sentencing transcript in which the court actually mentions in detail that it had considered, including for the assessment as to whether a consecutive term was fair in this circumstance. It had considered the 3553 factors. It also explicitly stated when imposing the consecutive sentence that general deterrence was a factor that the court had considered when making this specific determination. It said that the appellant's conduct when he obstructed justice sent a message that was not acceptable. And then the court also explained in detail the seriousness of the appellant's obstruction and explained why it believed that that warranted additional punishment. The court emphasized that it was a separate, although related, crime to the material support, providing material support to a terrorist organization. But the court is clear, and your honors are allowed to consider the whole transcript in its totality when assessing the district court's determination and decision to impose a consecutive sentence. And your honors- The statute says that the district court needs to explain why it's choosing a point within the guidelines range that's appropriate when it opposes a sentence of over two years, right? Here he gets a sentence below the guidelines range. So does his explanation for why he's varying below the guidelines range, does that suffice to discharge that obligation? Is that explaining why he's choosing a particular sentence? Yes, it does, your honor. In this case, as your honor said, the district court went significantly below the guidelines at resentencing. And the district court provided clear explanation as to why and what had changed from the initial sentencing up to that point. Unlike what the appellant disclaimed, the district court emphasized the new updated facts and And again, it went through the 35-53 factors and analyzed those in detail, including the seriousness of the crime, the history and characteristics of the appellant, how he had served the US force, one of the greatest American organizations. And then decided to turn his back and potentially use that sophisticated training against the United States. And so all of those reasons that the district court explains in detail are also relevant to the termination of imposing a downward variance from what the guidelines suggested. What about the mention of the fact that Congress has increased the statutory maximum? Is that a problem, since that new statutory maximum doesn't apply to the defendant here? Your honor, the government does not want to speculate as to why specifically the district court might have mentioned that specific comment. But the fact that the district court may have mentioned this twice in the totality of circumstances, doesn't bear the weight that appellant is trying to assign to that comment. Because he doesn't use it to justify a higher sentence? He does not, and because the- I mean, I suppose if, in fact, Congress had lowered the statutory maximum, it wouldn't be inappropriate for a district, for a sentencing judge to say, well, if you were convicted of the same conduct today, you get a lower sentence, and therefore I might not apply the statutory maximum today. Because it seems like the legislature has decided that it's actually not as serious conduct as it was at one time. So then why can't the district court note in deciding whether to oppose the statutory maximum or below whether there has been a change in the statutory maximum subsequent to his conduct? Well, your honor- Is it inappropriate for the district court to say that? Again, without speculating into specifically why the district court might have mentioned that comment in particular, it is possible. And as this court also mentioned in its initial opinion, that Congress had made that change. That the reason for mentioning it is that the district court is actually giving serious consideration to Congress's intent in determining the gravity of the crime. Providing material support to a horrific, violent organization. And again, in the totality of circumstances, mentioning one thing twice throughout a whole sentencing hearing does not bear the weight that the appellant is trying to impute on it. The district judge more than complied with the instructions of this court, the statutory and constitutional obligations that it had, and went throughout the 3553 factors. And again, this court does not- I think what you're saying is it didn't help, but it was not inappropriate under these circumstances. I don't believe, your honor, that it did not help. I believe it's potentially- Well, it didn't help for us, for appellate review. It might be the court's emphasis on Congress's judgment in determining the gravity of the offense. But it doesn't, again, without speculating as to why the district court might have said that, it does not necessarily mean that, or it does not appear, it's clear from the record, that that's not the one reason or the reason why the sentence was imposed. Why not speculate? I mean, isn't it clear why he mentions it? I mean, so, we've had cases before where the statutory maximum has been reduced subsequently to a defendant's conduct, and a district judge takes account of it by saying, you know, I know that if you were convicted today for the same conduct, you'd be subject to a lower statutory maximum, and therefore maybe that's a reason not to apply the full statutory maximum of the earlier conduct. So, why wouldn't you note that the Congress has not, in fact, reduced the statutory maximum, has, in fact, increased it, you know, in order to say, well, that's a reason not to go below the earlier statutory maximum? Yes, and there is nothing wrong in the government's view with that comment from the district court. What the government is trying to emphasize is that, unlike what the appellant tries to argue, that's not the sole reason why- If that were the only reason for substantially enhancing a sentence, I think that the government's position would be that that would be problematic, would it not? Yes, Your Honor, but that's not what the record supports in this circumstance. That's your ultimate point, is that we can't tell from this record, in fact, we probably can tell the reverse, which is it didn't materially affect, if at all, Judge Garris' sentencing decision, is that correct? That's correct, there's no indication that- And in any event, Judge Garris has considered a number of other 3553A factors. That's correct, Your Honor, yes, there's no indication that that observation or that comment somehow drove the decision. We've kept you well past your time. We'll hear from counsel for- Thank you, Your Honor. Mr. Pugh. Ms. Calderon. Thank you, Your Honor. Very briefly, I did want to just revisit the, I do believe that the court cited the congressional change as a way of justifying the 20-year sentence. And I think what was important at the time, certainly at the time of the initial sentence, where the national average was 8 to 12 years, where there was a 15-year maximum sentence, that there's nothing in this particular case that is extraordinary that would suggest a sentence that was beyond that amount. And so, I mean, is it wrong for the district court to consider among many factors the fact that our elected representatives have deemed a crime to be sufficiently serious, that they increase the maximum sentence? I mean, it's a piece of data that is available to the court to measure the gravity of a crime. Well, Your Honor, respectfully, doesn't that also ring of ex post facto? And as we're going to use a statute that's not in place currently, that's not available to us currently, we're going to use that to justify increasing somebody's sentence. When we really don't have a legal right to do that. And I think that- Well, he doesn't increase it above the statutory maximum that applies to Pew, right? So I guess I ask, so the opposite. So if, in fact, Congress had lowered the statutory maximum subsequent to Pew's conduct, and the district court said, well, if he were convicted today, he'd be subject to a lower statutory maximum. And so I'm going to take that into account when evaluating the seriousness of his conduct, because our society thinks that actually it's less serious on reflection after considering some experience with this kind of conduct. And he imposed a lower sentence, that would be fine, right? Yes, Your Honor. Why can't he say, well, in fact, that hasn't happened. The legislature thinks it's even more serious after thinking about it. And given that, that's one factor that I'm going to consider in deciding not to go below the statutory maximum that applies to Pew. I mean, clearly it would be a problem if you went above the statutory maximum that applied to Pew, but he didn't do that, right? So it's not exposed fact, he's not applying the new statutory maximum to Pew. He's just thinking about the seriousness of the conduct. He's talking about how our elected representatives have decided to evaluate the seriousness of this kind of conduct. Right, and in our view, what he did was then use, to justify the increase, was to cite things that were, in fact, speculative. Things like, well, it could have been really bad for the United States if ISIS got materials that we haven't even identified and we don't know if they're, they were even anything beyond more propaganda, which is all it was. He also, the expert at the trial certainly was focused on the fact that this individual had no ability to ever get to ISIS, given his preparation or lack thereof. So that all of this was in its own way speculative, this was an attempt. And it was a failed attempt. In which case, the statutory maximum seems all the more reason not to go in that direction. And it seemed that by tacking on the additional five years, the judge attempted to justify it by saying, well, he could have helped them because of his skill level, and he could have really done real damage. But he never had the ability to really ever get there, he never got there, he never got close to being there, and we don't know what was- But isn't that something the court can take into account? Doesn't that make him more or less dangerous? Somebody who's really skilled and focused on getting this done. I mean, sadly, I've represented so many young people in this situation who get caught up in the propaganda, but they don't get any further than the US airports and a ticket to Syria. That doesn't make them really a danger, because they're never getting out of our country. And it seems to me that here, you're quite right, Judge.  I mean, you're making reference to the young- All of this was in front of Judge Gariffas. In other words, Judge Gariffas is a very well experienced judge. Very well. And he had all of this in front of him. These arguments, I think, were before him. And I haven't heard from you an argument that he somehow ignored that, because he said that he considered all of it and made his decision. And as Judge Benashi and Judge Lyman have pointed out, as a result of the army man, there was a substantial downward variance of 100 and what? Over 100 months. So am I missing something in this? I think that- I appreciate your arguments about, who's a kid, inept, and so on. But all of those things that inure to your client's benefit seem to have been considered, at least reflected in the substantial downward variance. Which I think part of the problem that we're having with this sentence, and really not so much as the amount. But I think it was a failure to consider all of the 35, 53 factors that inure to my client's benefit. He had been a veteran. He served in the United States Air Force. In fact, when he was overseas working as a private contractor- Which way does that cut? I mean, if he was a veteran and serving in the United States Air Force, and then he wanted to join ISIS, that might be a serious betrayal. That might make the crime more serious. Again, and that's what- I just want to point out, I mean, there's this thing about a kid who's idealistic or whatever. But he was 46 years old when he tried to do that, right? Yes, correct. So if he was not a kid, who was he? I was not suggesting he was a kid. But when he was overseas for many years before he went through this ISIS craze, he was working for several military contractors. And he put his life at risk virtually every day, because he could do helicopter repairs. He was certified in aviation. And he would go on the helicopters into the war zone, so in case a helicopter broke down, it would be his job to repair it. But those helicopters were bringing supplies to American troops. So he continued for a long time after his service to serve this country, and in a war zone, in an area that put his own life at risk. And then he has this, I'll call it breakdown, but when he recovers, so to speak, in jail, he refocuses himself on things that 3553 take into account. And one of our arguments is the speculative nature of how much damage he could have done, how much damage the things that might have been destroyed might have done. All of that is speculative and not the kind of thing that this court has ever encouraged the district court to rely on. Thank you very much. Thank you, Your Honor. It was very helpful. Thank you.